IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**SUPERIOR HOME MORTGAGE, LLC,**
f/k/a **B&H FINANCE, LLC,** and
**ROGER SWAIM,**

    **Plaintiffs,**

  v.                                                                                                                                                No. 1:19-cv-01056-STA-jay

**JENNIFER AZBILL HALL** *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiffs, Superior Home Mortgage, LLC (formerly known as B&H Finance, LLC) and Roger Swaim, initiated this action on March 21, 2019, against Defendants, Terri Fesmire Sadler Marbury, David Marbury, Jennifer Azbill Hall, Billy Hall, B&H Investments, Inc., Benjamin Vargason Sr., Shonda Vargason, Great American Sport, LLC, and BancorpSouth Bank. (Docket Entry ("D.E.") 1.) Defendant Jennifer Hall ("Hall") was served on May 22, 2019. (D.E. 11.) On February 6, 2020, Plaintiffs filed a motion for entry of default against Hall based on her failure to file a responsive pleading or otherwise defend this matter, (D.E. 62), which the Clerk of Court granted. (D.E. 63.) Five days later, Plaintiffs submitted a motion for default judgment against Defendant, which included a request for either a hearing or an opportunity to submit an affidavit and documentary proof as to the amount of compensatory and punitive damages. (D.E. 71.) Hall did not respond to the motion. The Court granted Plaintiffs' motion and provided Plaintiffs an opportunity to submit proof of damages. (D.E. 73.) In support of their motion, Plaintiffs submitted an affidavit of Swaim, asserting that Plaintiffs' compensatory damages totaled to $1,050,000. (D.E. 78-1 at PageID 594.) Plaintiffs also requested an additional $3,950,000 in punitive damages

or, in the alternative, an award of treble damages, pursuant to 18 U.S.C. § 1964, in the amount of $3,150,000, and $25,000 in attorney's fees. (*Id.* at PageID 595.) Because Plaintiffs did not submit any documentary proof or indicate how they arrived at these amounts, this matter was referred to the undersigned for a hearing and determination as to what amount of damages should be awarded to Plaintiffs against Defendant Hall. (D.E. 82.) On September 24, 2020, the undersigned conducted a hearing on Plaintiffs' damages, during which Plaintiffs offered three collective exhibits and the testimony of Swaim as proof thereof. (D.E. 98; D.E. 99.) Defendant appeared at the hearing but did not offer any proof to contest the amount of Plaintiffs' damages.

## FACTUAL BACKGROUND

As to Hall, Plaintiffs' complaint sets forth twelve claims: (1) breach of contract; (2) unjust enrichment; (3) common law fraud/fraudulent misrepresentation; (4) wrongful trover/conversion and fraudulent conveyance/transfer; (5) breach of fiduciary duty; (6) violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, ("civil RICO"); (7) conspiracy to defraud; (8) constructive trust; (9) accounting; (10) embezzlement; (11) forgery; and (12) negligence/negligence per se. Since the Court has already granted Plaintiffs' motion for default judgment, the factual allegations in the complaint are construed as admissions by Hall. *See Sprint Sols., Inc. v. Lafayette*, 2018 U.S. Dist. LEXIS 104767, at *39–43 (W.D. Tenn. June 22, 2018) ("A default judgment is not itself clear and convincing evidence. A default judgment, however, 'impliedly constitutes an admission of all the properly pleaded material allegations of fact contained in the complaint, except the plaintiff's unliquidated damages.'"). Accordingly, the facts of this case are as follows.

Hall and Terri Marbury formed B&H Investments, Inc. in 1988; Hall served as an officer of the corporation, and Marbury acted as its vice president. B&H Investments was held out as a

business that provided mortgage loans and other secured loans to individual borrowers. In 2015, B&H Investments, through Hall and Marbury, entered into an agreement with B&H Finance for the purchase of certain secured loans that had been obtained by B&H Investments. At the time of the agreement, Hall made assurances and representations to B&H Finance—over the phone, via email, and in person—that the mortgage notes being sold were valid, properly secured, and that each note had a balance that was currently due and owing. Consequently, B&H Finance wrote checks for the notes, which B&H Investments deposited into its bank account.

After the transaction, B&H Investments was dissolved, and Hall began working for B&H Finance as an employee and 10% member of the company. Defendant's job responsibilities at B&H Finance included procuring payments from customers, delivering customer payments to Swaim, managing loan paperwork, and recording payments on existing mortgage notes. Significantly, her responsibilities did not include processing or depositing checks, or otherwise transacting business on B&H Finance's behalf. Nor did Hall have any check signing authority. In May 2018, Defendant terminated her employment with B&H Finance and withdrew as a member of the company. Following her departure, Plaintiffs discovered (1) that there were discrepancies between the purchase price and actual value of the notes received from B&H Investments, (2) that Hall had procured "dummy loans" on behalf of the company's customers, and (3) that she had been falsifying loan documents and diverting customer payments from B&H Finance.

Specifically, as to the transaction between B&H Finance and B&H Investments, Plaintiffs learned that the mortgage notes purchased had been either paid off or had a lower balance than that represented by Defendant. Concerning the dummy loans, Plaintiffs ascertained that Hall—as an employee and member of B&H Finance—had lied to them about purported customer requests for additional funding. In reality, no customers had requested additional loans. As a result of

Defendant's misrepresentations, Plaintiffs wrote checks made payable to certain customers, which Defendant endorsed and deposited into either B&H Investments' bank account or the checking account of Benjamin Vargason's company, Great American Sport, LLC ("GAS"). Regarding the diversion scheme, Plaintiffs discovered that Hall had been taking customers' payments and, instead of documenting the payments in B&H Finance's records, was endorsing the customers' checks herself and depositing the funds into the accounts of either B&H Investments or GAS.

As noted above, the Court granted Plaintiffs' motion for default judgment against Hall, (D.E. 73), and referred this matter to the undersigned for a hearing and determination on Plaintiffs' damages, (D.E. 82). Since Defendant's liability has already been established, the undersigned need only determine the extent of Plaintiffs' damages. *See Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.").

## DISCUSSION

At this juncture, Plaintiffs have the burden of proving the amount of damages with reasonable certainty. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). "In an action for damages caused by a fraudulent misrepresentation, the measure of general damages is the benefit of the bargain rule, which allows the plaintiff to recover 'the difference between the value of what the plaintiff would have received if the misrepresentations had been true, and the actual value of what the plaintiff received . . . .'" *United Inventory Servs., Inc. v. Tupperware Brands Corp.*, 2011 WL 13276822, at *5 (W.D. Tenn. Aug. 8, 2011) (quoting *Elchlepp v. Hatfield*, 294 S.W.3d 146, 151 (Tenn. Ct. App. 2008)); *accord Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998) (citations omitted) ("The injured party should be compensated for the actual injuries sustained by placing him in the same position he would have occupied had the

4

wrongdoer performed and the fraud not occurred. Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery.").

At the hearing, Plaintiffs offered the testimony of Swaim and three collective exhibits as proof of their damages. Concerning the transaction between B&H Finance and B&H Investments, Plaintiffs submitted a spreadsheet documenting the difference between the purchase price of the mortgage notes that they bought from B&H Investments and the true balance of those notes, copies of the checks Plaintiffs wrote to B&H Investments, and copies of promissory notes, security agreements, and deeds of trust that related to the purchased notes. The evidence demonstrated that Plaintiffs paid B&H Investments $683,764.27 for the notes, but that the actual value of the notes was $53,532.00, which resulted in a loss of $630,232.27.

Regarding the "dummy loans" that Hall procured, Plaintiffs tendered a spreadsheet detailing the values of checks written to customers—i.e., the amount of money B&H Finance extended to "customers" as a result of Hall's misrepresentation that existing borrowers were requesting additional loans—and copies of the checks. The proof established that Plaintiffs extended $146,836.00 in "additional loans"—the sum of which was deposited into either B&H Investments' or GAS's bank accounts, rather than the accounts of B&H Finance's customers.

And as for the diversion scheme, Plaintiffs' third collective exhibit, which included a spreadsheet of payments made by B&H Finance's customers and copies of checks and money orders made payable to the company, demonstrated that the sum of payments Hall diverted from Plaintiffs amounted to $148,842.30. The testimony and checks produced by Plaintiffs further revealed that Defendant, via GAS, had endorsed and deposited each check into GAS's bank

account.  In total, Plaintiffs' compensatory damages add up to $925,910.57.  Hall did not contest this figure during the hearing.

Upon review of the evidence submitted by Plaintiffs, and after hearing the testimony of Swaim, the undersigned finds that Plaintiffs have met their burden of proving the amount of damages with reasonable certainty.  Moreover, because the Court granted Plaintiffs' motion for default judgment, which established Hall's liability for, among other claims, civil RICO violations, the undersigned finds that Plaintiffs are entitled to treble damages pursuant to 18 U.S.C. § 1964(c).[1]  Therefore, the undersigned concludes that Plaintiffs should be awarded a judgment against Defendant in the amount of $2,777,731.71.[2]

## CONCLUSION

For the reasons provided above, the undersigned RECOMMENDS that damages be entered on Plaintiffs' claims against Defendant Jennifer Hall in the amount of $2,777,731.71.

Respectfully submitted this 22nd day of October 2020.

                                               s/ Jon A. York_____
                                               UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDATION, SETTING FORTH PARTICULARLY THOSE PORTIONS OF THE REPORT OBJECTED TO AND THE REASONS FOR THE OBJECTIONS.  *SEE* 28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2).  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[1] Section 1964 provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and *shall recover threefold the damages he sustains* and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c) (emphasis added).

[2] In their motion for default judgment, Plaintiffs also requested an award of $25,000.00 for attorney's fees; however, at the hearing, Plaintiffs did not submit any proof to substantiate their request.  Therefore, the undersigned finds that Plaintiffs are not entitled to an award of attorney's fees against Hall.